Argued at Pendleton May 9, reversed July 30, 1929.

BERNICE V. JONES *v.* FORREST JONES ET AL.

(279 Pac. 641.)

For appellant there was a brief and oral argument by *Mr. R. W. Swagler* and *Mr. C. W. Ellis.*

For respondent there was a brief over the name of *Mr. Wells W. Wood,* with an oral argument by *Mr. Ed. R. Coulter.*

ROSSMAN, J.—This is a suit for a divorce instituted by the wife predicated upon various charges of cruel and inhuman treatment. We do not deem it necessary to set forth an extended review of the numerous accusations which are averred in the complaint with much narration of detail, but due to the disposition which we are about to make of this suit we shall mention the following: The complaint alleges that three months after marriage the defendant, plaintiff, the latter's mother, and an employee of their ranch went to a dance, that shortly after their arrival the defendant "who had been drinking liquor, came to the plaintiff and wanted her to go home," that when she demurred the defendant "became very angry, and went over to the pool hall * * and got wildly drunk. When they learned of this, plaintiff's mother went to the pool hall where said defendant was, got him and they all went home. The defendant husband was so drunk that he was unable to drive the car home." This is followed by charges that later in the evening the defendant cursed and abused the plaintiff and accused her of being a lewd woman.

We come now to July of 1922 when the plaintiff was ill in a hospital; the complaint alleges that the defendant demanded sexual intercourse, and that when it was refused he became angry and left, saying that he would procure it elsewhere. The complaint alleges that later the defendant informed the plaintiff that he had done as he had threatened. The next paragraph alleges that in July of 1923 the defendant accosted the plaintiff in a dance-hall, when she was engaged in harmless conversation, with the accusation, "If you can't behave any better than this, you quit and go home with me." This pleading avers that these words, being spoken "publicly and in the presence and hearing of all the people assembled there * * wounded her feelings, and caused her to be an object of ridicule and gossip among all her friends"; this paragraph concludes with an averment that on their way home and after arriving at their home the defendant applied to her vile names, accused her of immoral conduct, struck and choked her. The complaint alleges that when the above incident took place the defendant was "under the influence of liquor," and charges that in September of 1923 when he was similarly "under the influence of liquor" he called her vile names and accused her of being a millstone around his neck.

These charges are followed by a series of others in which the complaint accuses the defendant of numerous acts of serious impropriety with domestics employed in the household. Upon one of these occasions the complaint avers that the plaintiff found the defendant and a domestic in bed together in the plaintiff's home; shortly thereafter, according to the plaintiff she discovered the same domestic and the defendant upon the davenport engaged in an act

of sexual intercourse. Next, the complaint charges the defendant with several acts of impropriety with another domestic; these. acts include mutual embracements, intoxication and "wrestling around on the floor." This series of accusations concludes with a recital of the names of three girls who, according to the complaint, left plaintiff's employ "because he repeatedy solicited them to have sexual intercourse with him." The next two paragraphs allege that the defendant falsely accused the plaintiff of serious acts of improper relations with the male employees upon the ranch. Other specifications of the general charge of cruel and inhuman treatment we shall not review in this decision.

The balance of the pleading concerns itself with the property rights of the parties. It is the contention of the plaintiff that the defendant is the owner of extensive ranches, and of large quantities of cattle, sheep, farming implements, automobiles and bank stock, that the defendant's father, who is also named a defendant, claims interests therein, including mortgages upon the real property, but that his claims are fraudulent and inferior to whatever rights the plaintiff may be possessed of. The relief sought is a decree of divorce, custody of the minor children, suit money, attorney's fees, monthly support money for the children, $3,000 alimony in gross, and one-third interest in the real property.

The answer contained a denial of all charges of wrongful conduct, and an averment that the defendant had always conducted himself towards the plaintiff as a kind, dutiful and loving husband. It averred the validity of the various bills of sale of the personal property, and of the mortgages upon the real property mentioned in the complaint, and alleged that

the defendant owned practically no property what-soever.

By way of cross-complaint the answer alleged that in 1922 the plaintiff became addicted to the use of morphine, "and that the effect of said drug had been such that it required the use of said drug at inter-vals of 15 minutes each, and that at the request and solicitation of the defendant the plaintiff went to Ontario, Oregon, to be treated for said drug habit." Further, the answer avers that the defendant makes "use of foul, vile and obscene language"; that in 1923 she and a friend became intoxicated and that upon that occasion the plaintiff made a vile remark concerning a man in the latter's presence; that she has falsely and maliciously accused the defendant of adultery; and that in the year 1926 she held a series of liquor parties in her home during the defendant's absence, in which vulgar stories were told, and the young men were permitted to take improper liberties with her. Next the answer accuses the plaintiff and a male employee of the ranch with several episodes of clandestine affection; this portion of the answer also accuses the plaintiff of acts of impropriety with other men. The answer concludes with a charge that the plaintiff and her mother have conspired to extort from the defendant a large sum of money and that this suit was brought for that purpose; it prays that the defendant be granted a decree of divorce and custody of the children.

The decree of the Circuit Court granted a divorce to the plaintiff, $6,000 alimony, custody of the chil-dren, support money for their care, and a one-third interest in the defendant's real property superior to the mortgages of his father. The defendant ap-pealed.

The above review of the pleadings, while extensive, by no means exhaust the material contained in them; it suffices, however, to indicate the nature of the accusations made by each against the other. It will be observed that these charges include adultery, intoxication, drug addiction, the use of obscene language, clandestine love affairs, extreme physical cruelty, and false accusations of adultery. In addition the plaintiff alleges her husband is possessed of approximately $100,000 of wealth, while he describes himself as practically penniless, working at a wage of $60 a month. The parties were married September 28, 1921, when the plaintiff was eighteen years of age, and the defendant was a few years older; this suit was filed January 31, 1928. It seems almost inconceivable that in the intervening six years so many serious charges could develop with such rapidity. However, it seems that suspicion, accusation and incrimination ran ahead of wrongful conduct, for it is abundantly clear that practically all of the serious charges are unsupported by the evidence. The testimony came from more than forty witnesses and is transcribed upon 1152 pages. A review of it induces the belief that when the wife smelled liquor on her husband's breath she felt justified in testifying that he was drunk; when he saw her with a few white tablets in her hand he concluded that she was addicted to the use of morphine; when there occurred in the household what plaintiff's mother described as a "spat," the plaintiff narrated it from the witness-stand as a fearful encounter in the course of which she became bruised; and an act of thoughtless indiscreetness by the wife with a farm hand is seized upon by the husband as the foundation for a charge closely bordering upon adultery.

Without undertaking to analyze all of the evidence we shall review one or two incidents. It will be recalled that the complaint alleges that upon an occasion the plaintiff, her mother, the defendant and an employee of the ranch attended a dance, that the defendant became intoxicated and demanded that they return home, that when the plaintiff suggested that she would like to remain longer that he became angry, went to a pool-hall and became "wildly drunk." Giving to the evidence, produced by the plaintiff, its most favorable effect this incident fails to take upon itself any importance. The husband made known his wishes in a proper manner, and when the plaintiff expressed her desire to remain longer he left the dance-hall; this was not due to anger, but because he rarely danced. At a later hour the plaintiff's mother found him in front of the pool-hall talking to a friend, and he quickly joined her in going to the family automobile. Evidence favorable to the plaintiff indicates that the defendant had drunk some liquor, but there is none to the effect that he staggered, swore or was boisterous. While the plaintiff and her mother testified that the ranch employee drove the car home, the latter, who seemingly was friendly to the plaintiff, did not corroborate this statement. The mother testified that on the way home plaintiff and defendant "spatted," but that the defendant was not abusive. Thus the charge that the husband was "wildly drunk," was unsupported by the evidence. We shall revert to the other charge concerning a dance; it will be recalled that the complaint alleges that the defendant publicly and in the presence of plaintiff's friends accused her of improper demeanor. Her testimony is that the defendant spoke his words in such a low tone that she was

doubtful whether the young man with whom she was engaged in conversation heard the remark.

The charge that the defendant was guilty of an act of adultery with one of the domestics we believe is not supported by the evidence. The girl bore a most excellent reputation for chastity and morality; both she and the defendant stoutly denied this accusation. The morning after this most serious offense against the conjugal relationship is said by the plaintiff to have occurred she, the defendant and the girl drove in the same automobile from the ranch to a near-by town and spent some time together in apparent harmony. The evidence indicates that the plaintiff told various conflicting accounts of this alleged incident. It seems to us highly improbable that a wife, whose home had been thus violated, would ride the next morning in the same automobile with her husband and the paramour. Possibly the girl and the defendant, as found by the court below, were guilty of some breach of proper conduct upon the occasion in question, but we are satisfied that it did not amount to the offense named in the complaint.

The able judge of the Circuit Court who patiently listened to the testimony expressed himself thus in regard to the many charges concerning the use of intoxicants:

"In this case there seems to be no preponderance of evidence as to which of the parties out-shone the other in the use of homemade beer or moonshine whiskey. Both drank when the occasion presented itself, but it can be said to the credit of both, from the testimony, that neither were addicted to the use of intoxicating liquors to any great extent; however, in the pleadings each of the parties to this divorce has charged the other of excessive drinking of intoxicating liquors, and they claim on account thereof that

life has become burdensome for the other. In the light of the testimony it is not believed that either of the parties used intoxicating liquors excessively, but it does show that both drank to some extent. Indeed, their drinking of beer was not infrequent, and in addition whenever one or either was so disposed he or she imbibed stronger drink than the homemade beer. However, such drinking on the part of one or the other did not become cruel and inhuman treatment making the other's life burdensome until their complaints were lodged in this court.''

We shall review no further the testimony in support of plaintiff's charges against the defendant, except to make the observation that all of it may be classified in three divisions; in the one is plaintiff's personal testimony, which is always more damaging to the defendant than that of any other witness; in the second division may be placed the testimony of plaintiff's mother and sister which is always more favorable to the plaintiff's cause than the testimony in the third classification, which came from the lips of those who were ostensibly disinterested but who in fact were friendly to the plaintiff.

The testimony in support of defendant's allegation that the plaintiff had become addicted to the use of morphine is not sufficiently substantial to warrant comment. The evidence that the plaintiff at times used vile language and told vulgar stories we are satisfied constituted no cruel treatment of the plaintiff; these parties lived in the open spaces, where the raising of livestock was the principal industry, and the defendant felt himself bound to maintain some of the traditions of the frontier. These being the circumstances we are led to believe that while these averments look imposing in the answer they were not deemed serious infractions of the matri-

monial obligations when spoken. The judge of the court below concluded that the defendant's evidence that the plaintiff had been unduly familiar with ranch employees proved only acts of indiscretion and impropriety.

After a careful review of all the evidence we believe that the only charges that seem supported by substantial evidence indicate that upon remote occasions the defendant slapped the plaintiff, possibly once pulled her hair, and on several occasions was unduly familiar with domestics employed in the household. The evidence which has a tendency to indicate the foregoing offenses was stoutly contradicted by the defendant, and he supported his personal testimony with that of others. If it were not for the fact that the plaintiff has made many baseless charges against the defendant of far greater magnitude than a slap, a pull upon the hair, etc., her testimony in support of the latter minor accusations would possess more cogency. But, when we bear in mind the fact that the destinies of two very young children, as well as the ownership of some valuable property is inextricably associated with this suit we must decline to act upon testimony thus seriously discredited.

The above conclusions are in substantial accord with those of the Circuit Court. The memorandum opinion of the judge of the latter tribunal found the plaintiff guilty of several acts of indiscretion in which men were concerned, and of other offenses which were not in harmony with an earnest desire for domestic happiness. The findings of fact are silent upon defendant's charges against the plaintiff, but excuse her accusations of adultery against him as not actuated by any malicious motive. The decree

for the plaintiff was the result, apparently, of a conviction that the two could not succeed in their matrimonial venture, and that the plaintiff was the least at fault. However, as we have just observed, the result for which each party prays, a termination of the matrimonial union, would affect not only them, but third parties as well; in the one instance two small children, and in the other, the property rights of several individuals. Under these circumstances we believe ourselves justified in declining to grope through 1200 pages of testimony in search of evidence to support minor charges when that which was offered to prove such major accusations as adultery, gross intoxication, and drug addiction has proven its own worthlessness and discredited its proponent.

The cause will be remanded to the Circuit Court, with directions to dismiss both the complaint and also the cross-complaint. Costs will not be allowed to either party.

REVERSED AND REMANDED, WITH DIRECTIONS.

BEAN, McBRIDE and RAND, JJ., concur.